Charles Marks, J.
Defendant, an internationally known literary agent and a member of the Bar of this State for more than 35 years, has moved, pursuant to section 250 of the Code of Criminal Procedure, to set aside the indictment returned against him by the Grand Jury. The indictment arises out of a highly publicized incident which occurred on January 7, 1966, when defendant, the complainant Otto Preminger, a famous motion picture producer and director, and their wives were dining at the “ 21 ” Club. A dispute arose between complainant and defendant, who had known each other for many years, over the sale by the defendant of the motion picture rights to the best-selling “ non-fiction ” novel, “ In Cold Blood ” by Trtiman Capote, and this dispute allegedly resulted in defendant’s assault of complainant.
On January 10, 1966, as the result of a short-form affidavit filed against him by a detective, who was not a witness to the occurrence, defendant was charged with felonious assault in the Criminal Court. The Judge there presiding adjourned the matter to January 28, 1966 and paroled the defendant in his own custody. On January 28, Preminger, for the first time, signed a formal complaint in Criminal Court against defendant, and defendant requested and received an adjournment until February 21, 1966.
At no time during the January 28 proceeding did the District Attorney indicate to defendant or his counsel his intention to remove the proceeding from the Criminal Court to the Grand Jury before the new adjourned date of February 21. On February 18, defendant, through counsel, informed the District Attorney and the foreman of the Grand Jury that he desired to exercise his rights under section 250 of the Code of Criminal Procedure to testify before the Grand Jury and asked for an opportunity to do so. On that date, defendant’s counsel were advised that the matter had already been submitted to the Grand Jury and thus the defendant would not be afforded the requested opportunity.
On February 21, 1966, in the Criminal Court, the District Attorney moved to dismiss the proceeding there pending because the defendant had been indicted by the Grand Jury on February 4.
*235 Defendant now contends that the District Attorney has, by his conduct, deprived him of two very valuable statutory rights to a preliminary examination in the Criminal Court pursuant to section 190 of the code, and to appear before a Grand Jury and testify under section 250 of the code; and has also deprived the Grand Jury of an opportunity to hear evidence in this case which might have persuaded it not to indict.
The question here presented is not whether, in every case, a defendant must be apprised of the District Attorney’s intent to proceed by indictment rather than through the Criminal Court, or whether the dismissal of an indictment, after trial, is warranted because of a failure to do so. Nor is the court here presented with a case where there is some justifiable basis for the District Attorney so proceeding or failing to so advise, as there might be in the case of professionalized crime, with the consequent fear of intimidation of witnesses or the revelation of previously unknown evidence to the prejudice of the prosecution’s case. The sole question posed is whether, in the case involving an individualized crime, of the sort perpetrated, if at all, by those with hitherto unblemished records, and where there is no proof upon which a finding of prejudice to the prosecution can be based, the defendant’s “ rights ” under section 250 depend solely upon the whim of the District Attorney. If that is true, of course the defendant would have no rights ’ ’ at all under that section.
The power of the court to order an implementation of section 250, in the proper case, even if it requires dismissal of an indictment, has been exercised in the past. In one such case, People v. Rosen (74 N. Y. S. 2d 624, 626-627) the court, while so doing, made certain pertinent statements concerning the historical origins of the Grand Jury, when it stated: “ It is nevertheless a fact that the grand jury was first created hundreds of years ago for the purpose of protecting individuals against oppression and not for the purpose of assisting in the prosecution of crime. * * * We often tend to forget that the primary purpose of the grand jury was to protect the innocent from unfounded accusations. Furthermore, under our law, it is the duty of the district attorney to present to the grand jury all of the evidence in his possession relating to a crime, even though it may tend to show that the particular individual did not commit the crime. It is his duty as a public officer to do that. A person’s reputation can be ruined forever by the mere handing up of an indictment, even though subsequently the indictment is dismissed, or the person tried and later acquitted.”
*236 Section 250 gives meaning to the duty “ to protect the innocent from unfounded accusations” by providing a statutory right to a person under investigation to appear before a Grand Jury. This right, correlative in many ways to the right of an accused to a preliminary examination in the criminal court, may, together with the said right under section 190 become a nullity where their exercise, as in this instance, is permitted to rest solely in the unfettered discretion of the District Attorney.
The fair administration of justice requires that a defendant shall not be deprived of his rights under section 250 because the District Attorney has in secret decided to remove the proceedings from the criminal courts to the Grand Jury room. It is obviously disadvantageous for a defendant to lose the opportunity of cross-examining a complaining witness against him. There is no constitutional right, or for that matter even, statutory right of the defendant to insist that the District Attorney proceed only in the criminal courts and not by way of Grand Jury investigation. Nor is there an absolute right, in all cases, to testify before the Grand Jury. There is no concomitant disadvantage placed upon the District Attorney by permitting defendants in cases such as this to appear before the Grand Jury. By his voluntary appearance before the Grand Jury, under a waiver of immunity as required by statute, the defendant gives up his constitutional right to remain silent and whatever testimony he gives before the Grand Jury can be used against him. The District Attorney and the Grand Jury will have the advantage of learning from the defendant’s own mouth just what his testimony is and what his testimony can be expected to be at the time of trial, in the event the Grand Jury indicts him after hearing his testimony.
In People v. Rosen (supra) the court referred to the defendant there as a man of “ good reputation”, against whom no previous charge had ever been made. The same must be said about the defendant in this case. While no absolute duty rests upon the District Attorney to inform a prospective defendant of the Grand Jury proceeding (People v. Grossman, 35 Misc 2d 488), it is always incumbent upon the District Attorney to act fairly that justice may be done. (Berger v. United States, 295 U. S. 78.) It would be patently unfair for this court to sanction a procedure whereby the District Attorney can at one and the same time lull a defendant into believing that he will have an opportunity in the criminal courts to cross-examine a complaining witness against him and, if he so desires, to testify in his own behalf in the criminal courts, and yet effectively deprive him of his rights under section 250 by keeping secret from the *237 defendant the fact that the District Attorney has unilaterally decided not to wait for the case to be heard in the criminal court but to submit the matter to the Grand Jury.
No satisfactory explanation has been offered by the District Attorney as to why he proceeded within four court days after the complaint had been sworn to for the first time by the complainant, to place the matter before the Grand Jury.
It cannot be said in this case, as alleged by the District Attorney, that there were ‘ ‘ lengthy or numerous” adjournments obtained by defense counsel. Both the complainant and the defendant maintain residences in this city and there was no evidence that their travel plans would have made them or witnesses to the event unavailable to testify in the Criminal Court.
In United States v. Berger (supra) the United States Supreme Court set forth a doctrine which applies with equal vigor to a District Attorney as well as to a United States Attorney. The court there stated (p. 88): “ The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two fold aim of which is that guilt shall not escape or innocence suffer.” (See, also, People v. Fielding, 158 N. Y. 542, 547; People v. Santoro, 63 N. Y. S. 2d 615, 618-619.)
Under the facts and circumstances of this case, the court finds that the obligation of the District Attorney to act fairly and with justice to all in mind requires that the defendant be given an opportunity to appear before the Grand Jury, or, at least, to have notified him that the matter was being submitted to the Grand Jury so that the defendant would have the choice of availing himself of his statutory rights if he so desired. The defendant claims that his testimony would have been extremely important and significant to the Grand Jury, a claim not disputed by the District Attorney.
This court recognizes the existence of authority to the contrary, though the cases cited by the District Attorney involved far more heinous crimes. (People ex rel. Mleczko v. McCloskey, 33 Misc 2d 175 [murder], affd. without opn. 16 A D 2d 878; People v. Powell, 31 Misc 2d 833 [kidnapping]; People v. Grossman, 35 Misc 2d 488 [rape and murder].)
However, it must also be recognized that in addition to the Rosen case (supra) the decision in People v. Mead (11 A D 2d 600, 601) supports defendant’s position here, as does the ever- *238 broadening current concern of the courts to ensure the proper and fair administration of the criminal law in our courts. It is also consonant with the role of the District Attorney as a quasi-judicial officer concerned with justice and fairness. Significant also is the fact that there can be no prejudice to any of the People’s rights if the court affords this defendant an opportunity to be heard.
The instant motion is granted, the indictment set aside, and the District Attorney is directed to resubmit the facts to another Grand Jury and to notify the defendant and his counsel of the date thereof. In view of this disposition, the other motions by defendant have become moot, and are denied.