OPINION OF THE COURT
Michael A. Gary, J.
This decision addresses the issue of whether the fact that a *101 defendant was undergoing a court-ordered examination of her fitness to proceed pursuant to CPL article 730 constitutes good cause for the People’s failure to dispose of the felony complaint or be ready to commence a hearing thereon by the return date when the defendant is found fit to proceed. (See, CPL 180.80.)
On December 11, 1988, Denise Smith, a 47-year-old woman who had never been arrested before, was arraigned on a felony complaint charging her with the crimes of attempted assault in the second degree (Penal Law §§ 110.00, 120.05 [2]) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]). On motion of the People, defendant was then remanded to the custody of the Commissioner of the Department of Mental Hygiene on an order of examination pursuant to CPL 730.20 (3).
Defendant first appeared before this court on January 6, 1989, the adjourned date set at arraignment. The 730 report was not completed and the staff at Mt. Sinai Hospital asked for more time. The case was adjourned and defendant remanded until January 20, 1989, some 40 days after defendant was arraigned
On January 20, a Friday, the case was called at 6:00 p.m. when the courtroom was empty of all but assigned personnel. Unfortunately, defendant’s court-appointed counsel, a sole practitioner, was justifiably absent and unable to be contacted.
The two psychiatrists who had examined defendant pursuant to the statute unanimously concluded that she was fit to proceed. (CPL 730.20 [5].) At this juncture, the People moved to confirm the report’s finding. The court, having read both psychiatrists’ reports carefully and having observed the defendant’s demeanor, found no reason to conduct a hearing on defendant’s fitness. (See, CPL 730.30 [2].) The court further surmised that if defense counsel could be consulted she would offer no reason why her client should be remanded an additional 72 hours (until Monday) merely to wait for her appearance in order to confirm the report’s findings and move for her release pursuant to CPL 180.80. Satisfied that the defendant was not an incapacitated person, the court, as required by statute, then inquired if the People were ready to proceed. (See, CPL 730.30 [2].) They answered in the negative.
The People then asked for "a good cause extension granted by the CPL in consideration of fairness to both the defendant *102 and the People.” (See, CPL 180.80 [1], [3].)[1] The People urged four bases for a finding of good cause. First, they claimed the defendant’s own condition caused the delay in indictment, citing CPL 180.80 (1). Second, if an indictment had been obtained and the defendant was subsequently found fit to proceed, she would be deprived of her right to testify. (See, CPL 190.50 [5] [a].) Third, it appeared to the People that the defendant was not competent and, without the benefit of the 730 examination results, "you’re not sure whether you are able to prove intent and the culpability required by the statute and the results of the 730 examination would be significant in your coming to that conclusion.” Additionally, the People claimed: "We have had no opportunity to consider the strength of witnesses in this case and, I submit to your Honor, that provides good cause for the delay and I request an adjournment to next week so that we could examine the case and get our witnesses into court if we determine that we should present the case to the Grand Jury in light of the defendant’s condition.” The People did not address the question why this could not have been done during the 40 days defendant was incarcerated.
Finally, the People asserted that their delay in proceeding to the Grand Jury was grounded on "fairness” to the defendant because the level of prosecution chosen has a significant impact on whether the defendant is criminally prosecuted. They stated: "If we choose to indict and the defendant is found incompetent, then the case proceeds in a criminal setting. If *103 we choose, for example, to reduce the charge to a misdemeanor, we’re not ready to dismiss altogether, then the defendant is in the hospital and to justify her continued detention in the hospital, we have to proceed under the civil setting.” The People acknowledged that they were unaware of any case law that supported their position. The court, after addressing each of the arguments on the record and finding each of them unpersuasive, released the defendant on her own recognizance and adjourned the case for Grand Jury action. A written decision setting forth the court’s reasoning follows because the court’s own research has disclosed no case law on this specific issue, which arises quite frequently in the Criminal Court.
Turning to the People’s first two arguments, this court finds that the defendant’s CPL article 730 examination did not delay the proceedings; nor would the indictment of the defendant have deprived her of the right to testify before the Grand Jury. While CPL 180.80 (1) refers to a failure to dispose of the felony complaint or commence a hearing thereon due to the "defendant’s * * * condition”, a fair reading of the statute makes it clear that this term does not include a defendant undergoing a court-ordered mental examination. (See, CPL 730.30 [1].) To rule otherwise would render meaningless CPL 730.40 (3), which provides a Grand Jury may vote an indictment against a defendant committed under an order of observation and such Grand Jury need not hear the defendant pursuant to CPL 190.50. (People v Searles, 79 Misc 2d 850 [1974].)
The People’s third argument, that without knowing the results of the 730 examination they would not know whether they could prove defendant’s criminal intent, and consequently an adjournment was justified to examine their witnesses in light of the 730 report’s findings, completely misperceives the legal significance of the 730 examination. To begin with, CPL 730.30 (1) provides that the court must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person. An "incapacitated person” is defined as "a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense.” (CPL 730.10 [1].) The 730 examination simply does not address the issue of defendant’s sanity at the time of the crime or his criminal intent. The singular purpose of the 730 exam lies in discovering whether the defendant has the mental capacity to stand trial presently, not whether the defense of mental defect would *104 be sufficient at trial. That is to say, the 730 process has absolutely no bearing on the People’s direct case. Additionally, this court questions what more the People could have learned about proving the defendant’s criminal intent from the 730 examination report that they presumably did not already know. A defendant’s intent is generally proven inferentially by the defendant’s words and acts at the time of the crime as described by the People’s own witnesses and/or the defendant’s statements, if any, made after the crime to the People’s witnesses. The People already had 40 days to assess this evidence.
It should also be noted that the presumption of defendant’s sanity operates at the Grand Jury stage as well as at trial. The results of the 730 examination would not be admissible against the defendant until she raised the issue of her mental condition at trial. (CPL 730.20 [6].)
Therefore, for all of the above reasons, delaying a Grand Jury presentation in order to await the results of the 730 examination cannot constitute good cause pursuant to CPL 180.80 (3).
In its simplest terms, the People finally claim that their delay in indicting inures only to the defendant’s benefit — if the defendant is found incompetent, the People might simply reduce the charges to misdemeanors, thereby allowing the defendant to escape criminal prosecution altogether if the court issues a final order of observation and dismisses the charges. (See, CPL 730.40 [2].) However, if the People were to proceed with obtaining an indictment and the defendant was subsequently found not fit to proceed, the prosecution would merely be held in abeyance. (See, CPL 730.50.) This argument in support of a good cause extension of CPL 180.80 is superficially appealing, in that it attempts to paint the picture that timely Grand Jury action against the defendant is against the interest of justice! Of the manifold defects in this argument it will suffice to discuss only one.[2]
*105 The People make two assumptions in order to uphold their theory that they are being fair to defendant in holding off presentation of their case while they choose whether to proceed on a felony or a misdemeanor: (1) that the defendant will not be found fit, and (2) the Grand Jury will always indict. The fallacy of these assumptions was borne out in this case where the defendant was found fit to proceed. More importantly, the assumption that the Grand Jury will always indict ignores the power the Grand Jury has as the only arbiter of whether or not the defendant should be subjected to a felony prosecution. The People admittedly never evaluated the case, nor presented their case to the Grand Jury. Ironically, at the adjournment following defendant’s release, the only felony charge, attempted assault in the second degree, was dismissed on the People’s motion. The court is sympathetic with the People’s desire to conserve scarce prosecutorial resources but that alone does not justify a good cause extension of CPL 180.80. The court would strongly suggest that if the People truly seek to be fair to defendant they discuss with defense counsel their desire to delay Grand Jury presentation. If defendant’s counsel agrees that there is merit to waive her client’s CPL 180.80 rights for purposes of reviewing CPL article 730 results, she can do so. A defendant’s 730 examination does not suspend the People’s obligation to speedily prosecute the defendant.

. CPL 180.80, insofar as relevant, reads as follows:
"Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, the local criminal court must release him on his own recognizance unless:
"1. The failure to dispose of the felony complaint or to commence a hearing thereon during such a period of confinement was due to the defendant’s request, action or condition, or occurred with his consent; or * ** *
"3. The court is satisfied that the people have shown good cause why such order of release should not be issued. Such good cause must consist of some compelling fact or circumstance which precluded disposition of the felony complaint within the prescribed period or rendered such action against the interest of justice.”

. Another infirmity in the People’s argument for delay in this case, as good cause under CPL 180.80 (3), is that the situation could result in discrimination against a class of defendants which might be violative of the Equal Protection Clause. In effect, all mentally competent defendants would enjoy the statutory protection of CPL 180.80 in that if they are held in excess of 144 hours or 6 days without Grand Jury action or a preliminary hearing, and no good cause is shown therefor, they will be released from custody.
In contrast, pursuant to the People’s proposed "good cause”, certain *105 defendants would now be held in excess of 30 days without the benefit of CPL 180.80’s protection merely because their mental competence is questioned and solely for the purpose of allowing the People to review the 730 examination report whose results may well confirm that they were mentally competent in the first place!